IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| T. PETER TAGUE<br>878 Welsh Road<br>Maple Glen, PA 19002<br><br>   On Behalf Of Himself And All<br>   Others Similarly Situated,<br><br>               Plaintiff,<br><br>            v.<br><br>CROSS COUNTRY HEALTHCARE, INC.<br>6551 Park of Commerce Blvd., NW<br>Boca Raton, FL 33487<br><br>               Defendant. | :<br>:<br>:<br>:   C.A. NO.<br>:<br>:<br>:   CLASS ACTION<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## CLASS ACTION COMPLAINT

### I. INTRODUCTION

Plaintiff brings this action pursuant to the Telephone Consumer Protection Act, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), 47 U.S.C. § 227 et seq., and the Federal Communications Commission's regulations promulgated thereunder, 47 C.F.R §64.1200.   Plaintiff seeks to represent a Class, defined below, who were sent one or more advertisements via facsimile transmission by or on behalf of Cross Country University/Cross Country Education, which is the Education and Training Division of Cross Country Healthcare, Inc.   Plaintiff seeks to recover statutory damages authorized by the JFPA, 47 U.S.C. § 227(b)(3)(B), in the amount of $500.00 per violation and, if appropriate, in the amount of $ 1,500.00 per violation for the willful and knowing violation of the statute.

### II. PARTIES

1.     Plaintiff T. Peter Tague ("Plaintiff") is a Chiropractor with offices located in Maple Glen, Pennsylvania.  Plaintiff is, and at all relevant times has been, a citizen of the

1

Commonwealth of Pennsylvania.  He brings this action individually and on behalf of a plaintiff class defined in paragraph 17 below.

2. Defendant Cross Country Healthcare, Inc. ("Cross Country") is a corporation with its principal address and corporate offices located in Boca Raton, Florida.  Cross Country's Education and Training Division is Cross Country University ("CCU"), with regional office located in Malden, Massachusetts and Nashville, Tennessee.  CCU is a national leader in educational products and services for the health care industry.  Defendant produces over 5,000 seminars and conferences annually for the health care industry.  At all times material hereto, Cross Country was engaged in business within the Commonwealth of Pennsylvania and within the Eastern District of Pennsylvania.

## II. JURISDICTION AND VENUE

3. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  This is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, the amount in controversy exceeds $5,000,000.00, exclusive of interests and costs, and the Plaintiff and a majority of class members are citizens of a State different from that of Defendant.

4. Venue is appropriate in this District because Plaintiff resides in this District. Defendant does business in this District and caused facsimile advertisements to be sent into this District in violation of the Junk Fax Prevention Act.

## IV. FACTUAL BACKGROUND

5. The Telephone Consumer Protection Act of 1991, 47 U.S.C. §227, the facsimile advertising portions of which were amended by the Junk Fax Prevention Act of 2005 effective July 9, 2005, was intended to deal with the increasingly common nuisance of telemarketing.  Section 227(b)(1)(C) prohibits the use of a telephone facsimile (fax) machine, or computer, or other device, to send an unsolicited

2

advertisement to another facsimile machine. Section 227 (b)(3)(B) provides for a civil penalty in the amount of $500.00 for violation thereof, and Section 227 (b)(3)(C) allows the Court to increase the $500.00 civil penalty to $1,500.00 if the Court finds that Defendant willfully or knowingly violated the section.

6.  Title 47 U.S.C. §227 (a)(5) states: "The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission, in writing or otherwise." Prior to the passage of the Junk Fax Prevention Act of 2005 on July 9, 2005, the only exception to the prohibition regarding faxed advertisements was prior express invitation or permission.

7.  In addition, the TCPA authorized the Federal Communications Commission (FCC) to adopt regulations defining the prohibited conduct and setting forth procedures for enforcement. 47 U.S.C. §227(b)(2) and (c)(2). The regulations are codified at 47 C.F.R. §64.1200 (2001). Those regulations also prohibit the sending of unsolicited advertisements by fax. 47 C.F.R. § 64.1200(a)(3) states that no person may: "use a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine."

8.  Section 227(b)(1)(C), as amended by the Junk Fax Prevention Act of 2005, added an exception to the blanket prohibition against unsolicited advertisements for prior established business relationships, where certain other criteria are met. Specifically, the JFPA prohibits the use of a telephone facsimile (fax) machine, or computer, or other device, to send an unsolicited advertisement to another facsimile machine unless:

(i)  the unsolicited advertisement is from a sender with an established business relationship with the recipient;

(ii)  the sender obtained the number of the telephone facsimile machine

through –

   (I) the voluntary communication of such number, within the context of such established business relationship, form the recipient of the unsolicited advertisement, or

   (II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before the date of enactment of the Junk Fax Prevention Act of 2005 [enacted July 9, 2005] if the sender possessed the facsimile machine number of the recipient before the date of enactment; **and**

 (iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D), except that the exceptions under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E).

 9. Section 227 (b)(2)(D) of the Act, referred to above, provides that the notice contained in an unsolicited advertisement complies with the requirements of subparagraph (b)(1)(C) only if –

 (i) the notice is clear and conspicuous and on the first page of the unsolicited advertisement;

 (ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a

4

request meeting the requirements under subparagraph (E) is unlawful;

   (ii) the notice sets forth the requirements for a request under subparagraph (E);

   (iv) the notice includes

     (I) a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender; and

     (II) a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement; the Commission shall by rule require the sender to provide such a mechanism and may, in the discretion of the Commission and subject to such conditions as the Commission may prescribe, exempt certain classes of small business senders, but only if the Commission determines that the costs to such class are unduly burdensome given the revenues generated by such small businesses;

   (v) the telephone and facsimile machine numbers and the cost-free mechanism set forth pursuant to clause (iv) permit an individual or business to make such a request at any time on any day of the week; and

   (vi) the notice complies with the requirements of subsection (d).

 10. The Junk Fax Prevention Act of 2005 is not retroactive. It was signed into law on July 9, 2005. Accordingly, the amended statute applies to faxes sent on or after July 9, 2005, and the TCPA, as it existed prior to the passage of the Junk Fax Prevention Act, applies to faxes sent before July 9, 2005.

 11. The Federal Communications Commission ("FCC") has determined that the advertiser, in addition to the entity that actually transmitted the fax (if different), is ultimately liable for compliance with the ban on unsolicited facsimile advertisements and is liable for its conduct. See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 1995 WL 464817, 10 F.C.C.R. 12, 391

(F.C.C. 1995).

12. Between October 27, 2005 and September 5, 2006, Plaintiff received on his facsimile machine thirteen (13) unsolicited advertisements sent by or on behalf of Defendant. True and correct copies of the unsolicited advertisements received by Plaintiff are attached hereto as Exhibit A.

13. At no time has Plaintiff given his express invitation or permission to Defendant to transmit to his fax machine(s) the documents attached hereto as Exhibit A, so that each fax is an unsolicited advertisement.

14. Plaintiff did not, and does not, have a prior established business relationship with Defendant. Even if he did, none of the faxes contain a notice meeting the requirements of 47 U.S. C. § 227(b)(2)(D). Therefore, the exception for prior established business relationships created by the JFPA can not apply and the faxes violate the JFPA regardless of whether or not Plaintiff, or any member of the class, had a prior established business relationship with Defendant.

15. The faxes were not sent as the result of an accident or mistake. Rather, the faxes were sent willfully and knowingly, as those terms have been interpreted under the Communications Act.

16. Defendant's actions in sending the faxes attached hereto as Exhibit A violate the Junk Fax Prevention Act, the violation is willful and knowing, and Plaintiff and the Class are entitled to statutory damages as outlined below.

## V. CLASS ACTION ALLEGATIONS

17. **Class Definition**. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following class:

> All persons or entities that are holders of telephone numbers to which a facsimile transmission was sent by or on behalf of Cross Country Healthcare, Inc. or its educational division Cross Country University at any time between January 29, 2003 to and including the present,

>    substantively similar to any of the faxes attached hereto as
>    Exhibit A, or otherwise advertising Cross Country
>    Healthcare, Inc. or Cross Country University.  Excluded
>    from the class is Defendant, and its officers, directors,
>    employees, agents, predecessors, successors,
>    subsidiaries and affiliates (the 'Class').

Plaintiff reserves the right to amend the definition of the Class upon completion of class certification discovery.

17. 18. A class action is the only practical means available for members of the class to recover the statutory damages to which each is entitled, and to stop Defendant's' unlawful conduct.

19. **Numerosity (F.R.C.P. 23(a)(1))**.  The class is so numerous that joinder of all members is impracticable.  Plaintiff believes, and therefore avers, that faxes such as those attached hereto as Exhibit A were sent to thousands of health care professionals in various states as part of Defendant's marketing efforts.  Cross Country's website states that since 1995, Defendant has trained over 1,000,000 health care personnel and has produced over 5,000 seminars and conferences annually for the health care industry.  Indeed, the very nature of the fax broadcasting indicates that the Class is more than sufficiently numerous to make joinder impracticable.   Identification of the members of the class can be ascertained in discovery of Defendant's database and/or from Defendant's other books and records, or from other sources.

20. **Commonality (F.R.C.P. 23(a)(2))**.  Common questions of law and fact apply to the claims of all class members.  Common material questions of law and fact include, but are not limited to, the following:

    a.  whether Defendant sent unsolicited facsimile advertisements to the fax machine of Plaintiff and members of the Class;

    b.  whether  Defendant violated the JFPA by sending unsolicited facsimile advertisements to the fax machine of Plaintiff and Class members

7

as to render them liable to the Class;

      c.    Whether the faxes attached hereto as Exhibit A contain a notice that meets the requirements of 47 U.S. C. § 227(b)(2)(D);

      d.    Whether the faxes were sent willfully and/or knowingly;

21.    **Typicality (F.R.C.P. 23(a)(3))**.  Plaintiff's claims are typical of the claims of all class members.  Plaintiff is a class member.  Plaintiff is making the same claims and seeking the same relief for himself and all class members based on the same statute.  Defendant has acted in the same or similar manner with respect to Plaintiff and all other class members.

22.    **Fair and Adequate Representation (F.R.C.P. 23(a)(4))**.  Plaintiff will fairly and adequately represent and protect the interests of the class.  He is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the Class.

23.    **Need for Consistent Standards and Practical Effect of Adjudication (F.R.C.P. 23(b)(1)).**  Class certification is appropriate because the prosecution of individual actions by class members would:  (a) create the risk of inconsistent adjudications that could establish incompatible standards of conduct for Defendant; and/or (b) as a practical matter, adjudication of Plaintiff's claims will be dispositive of the interests of class members who are not parties.

24.    **Common Conduct (F.R.C.P. 23(b)(2))**.  Class certification is also appropriate because Defendants have acted and refused to act in the same or similar manner with respect to all Class members thereby making injunctive and declaratory relief appropriate.  Plaintiff demands such relief as authorized by the JFPA.

25.    **Predominance and Superiority (F.R.C.P. 23(b)(3))**. Common questions of law and fact predominate and a class action is superior to other methods of adjudication.

      (a)    Proof of the claims of the representative plaintiff will also prove the

claims of the Class without the need for separate or individualized proceedings.

    (b) Defendant has acted and is continuing to act pursuant to common policies and practices in the same or similar manner with respect to all class members.

    (c) The amount likely to be recovered by individual class members does not support protracted individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based on common proofs.

    (d) This case is inherently manageable as a class action in that:

    (i) Defendant, or the entity that sent the faxes on Defendant's behalf, or the telephone company responsible for the telephone line over which the faxes were sent, maintains computer and business records which will enable Plaintiff to readily identify class members and establish liability and damages.

    (ii) liability and damages can be established for Plaintiff and the class with the same common proofs.

    (iii) statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or similar manner.

    (iv) a class action will result in an orderly and expeditious administration of claims, and it will foster economies of time, effort and expense.

    (v) a class action will contribute to uniformity of decisions concerning Defendant's practices.

    (vi) as a practical matter, the claims of the Class are likely to go unredressed absent class certification.

### VI. FIRST CAUSE OF ACTION
**(Violation of the Telephone Consumer Protection Act as Amended By The Junk Fax Prevention Act of 2005)**

26. Plaintiff refers to and incorporates herein paragraphs 1 through 25 inclusive, as though fully set forth herein.

27. Defendant's conduct constitutes a violation of the Junk Fax Prevention Act, 47 U.S.C. §227(b)(1)(C), and FCC regulations, 47 C.F.R. §64.1200 (a)(3), which

prohibit the use of a telephone facsimile machine, or computer, or other device, to send an unsolicited advertisement to another facsimile machine.

28. Pursuant to 47 U.S.C. § 227(b)(3)(B), Defendant is liable to Plaintiff and the members of the Class for minimum damages for each statutory violation in the amount of $500.00. Plaintiff alleges that the faxes were sent willfully or knowingly, and seeks treble damages in the amount of $1,500.00 for each statutory violation.

29. Pursuant to 47 U.S.C.§227(b)(3)(A), Plaintiff seeks to enjoin Defendant from violating the Act as described above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant, and requests that the Court:

A. Certify this action as a class action;

B. Award minimum statutory damages of five hundred ($500.00) dollars per statutory violation to each member of the Plaintiff Class and against Defendant;

C. Award treble statutory damages of fifteen hundred ($ 1,500.00) dollars per statutory violation to each member of the Plaintiff Class and against Defendant;

D. Enjoin Defendant from further violations of the JFPA;

E. Grant such other and further relief as the Court deems fair and proper under the circumstances. The total claim in this action is for an amount in excess of arbitration limits.

Dated: January 25, 2007                     Respectfully submitted,

/s/ Ann M. Caldwell
Ann M. Caldwell
**CALDWELL LAW OFFICE LLC**
108 W. Willow Grove Ave., Suite 300
Philadelphia, PA 19118
(215) 248-2030
(215) 248-2031 (fax)

**Attorney for Plaintiff and the Class**